Good morning everyone. Before we begin I just want to note that we're very honored to have with us today Judge James Moran who is visiting us from the District Court of the Northern District of Illinois. He will be sitting with us on both panel I and panel I plus which will which will follow. We have on the panel I three cases. One of the cases is a submitted case. It's being submitted on the briefs without oral argument. It's number 07-7281 Rivers v. the Department of Veterans Affairs. Again that case is being submitted on the on the briefs. We have two cases for oral argument before the panel and we'll hear argument in those two cases and then the panel will adjourn and after a recess the court will reconvene and a reconstituted panel panel I plus will hear the final case for this morning. But with that said we'll proceed to the first case which is on the schedule for oral argument number 07-3147 Lair v. Department of Homeland Security. Mr. Tonkin. I just want before you get into your time I just want to confirm you have three minutes for rebuttal. That's correct. Okay Pardon? I had a hard time getting here this morning. Oh with the weather. With the weather. Oh well glad you made it. Thank you. I represent Gary Lair who is a terminated Department of Homeland Security special agent. The case basically my argument is basically that the administrative judge committed reversible error so to speak in terms of regular cases and his denial of my motion to recuse him and with respect to that in over 40 years of practice I never filed a motion for recusal but when this judge made the comments that he made during the pre-hearing conference which is in my brief page 16 I felt incumbent upon me to file a recusal. Mr. Tonkin what was the what was the focus of the of the pre-hearing conference because I mean the sense is that that I got was that the the administrative judge the AJ was simply assessing the case in the context of possible settlement. That's part of it. And that's standard. Here are the people who believe this and this is incredible and goes on and on and on. Defenses are incredible on their face. They're ridiculous. You're not telling the truth. He shouldn't expect a good result which may go to the settlement part of it. Your representations were ridiculous regarding the use of the word cousin and I had presented a statement from the United States Attorney for the Southern in the context of close relationships. Cousin means close friend, close person who is close to you in terms of a relationship. He then went on to say that the letter which is the subject matter of specification number two where he used the word cousin was enough to sustain the removal. He went on to then deny me what then we as you are aware we discuss witness. Your argument I guess with respect to the to the your contention with respect to the recusal point is that you say that the judge had a predisposition with respect to your client's case and that to the extent his decision implicates credibility determinations that's where you were hurt. Is that? That's a part of it yes. That's part of the of my argument especially when he denies a witness who would debunk several of the charges. Charges charge one, specification two, and that is the the witness merchant who was a CIS official who I said would testify to things the judge said well that's immaterial and then he finds my client having been found guilty of those things he said were immaterial that my witness would testify to. Well the judge does have though the AJ does have considerable discretion as to the admission of testimony in a did seem to be a lot of evidence before the AJ on the basis of which you know he could come to a conclusion. Yeah but he denied he denied me a witness he should at least have had give me the opportunity to present the witnesses say I don't want to believe this witness and what he says is immaterial but but the real true chutzpah in this case judge is when I say I have a statement that I want to preserve my record with and he even denies me the right to do that to me that shows a real predisposition of a denial of due process in this case and that that well after the after your argument with respect to the refusal of the AJ to recuse himself is your main contention the the sufficiency the evidence that was the sense I got from your brief with respect to the several charges. I appreciate that you digested my brief sir. Yes sir. With respect to that it is true is it not you're gonna have to show that there wasn't sufficient evidence for any of the charges to overturn the decision. No sir the law as I understand it to be in matters like this if you bring five charges and only one charge is sustained then you have to take into account that one charge and assessing the penalty you can't just say I find one charge as being sustained and therefore the termination is is approved so you have to look at the actual charges and what was done and the with respect to the evidence sufficiency of the evidence with regard to number specifications two and three I think they are the judge made a predetermination of two affidavits one given on May 13 2004 one given on May 20 2004 and he says respect to the employment that's correct that's in this case is you believe ten page affidavit given on Monday or this one page affidavit given it's in here judge it's not the affidavit one page affidavit and I believe the affidavit this affidavit I don't believe this affidavit then he permits that the agency to produce witnesses to say well we took that affidavit from her and she seemed to be credible and believable and that's what the judge relied upon but he would not permit me to produce witnesses to show that my client is a credible witness and I think that shows an abuse of discretion. Well that would have been I mean did the Mr. Merchant is it Merchant Mr. Merchant he he wouldn't really have had anything to offer by way of testimony with respect to that particular specification the employment of Ms. Rivera would he? No, it had nothing to do with the employment of Ms. Rivera. So if you go to the employment of Ms. Rivera. It was with respect to the October letter where there were three references to Mr. Laird's position and the whole issue of the reference to affidavit I don't look to the person I look to whether they will be responsible financially for this person being in the country. Well the gist of it was that this letter was kind of oozing if you will with an emphasis on Mr. Laird's position I mean that's the rest of it is that three times I think he repeated his position and you know it's not an unreasonable argument that the government made there that he's sort of subtly putting his thumb on the scale if you will. Well according to Mr. Merchant that's something we don't even take into consideration and he's an adjudicating officer and I think that's why his testimony would have been very important on that particular issue and with regard to specification one that's in my brief on page point two dealing with injecting himself into his opinion regarding whether the woman is there legally or illegally. We have to, and I presented the evidence and the case law on that. This was the initial telephone call. That was the initial telephone call which is charge one, specification one. The interesting thing is all that which the judge said in his pre-hearing conference is what he wrote in his initial decision which was then affirmed by the board and resulting in us being here today. I take it that Ms. Rivera was not available to either side as a witness? Nobody called her, neither side tried to call her as a witness? She's a nurse in Venezuela. So I don't know, I couldn't have taken her deposition and I know the agency could have taken her deposition because she was a foreign national. I guess there are procedures we could have done but that wasn't done. That was the sense I had, I just wanted to make sure, but nobody tried to get her as a witness? Nobody was able to? Right, we formally tried to get her as a witness but were unable to do so. There were discussions that took place between me and the agency attorney and it was just sort of left up in the air. So basically the argument is the judge made predisposition statements and then made those same statements in his initial decision from which we are appealing to the board and used evidence that should not have been admitted by bolstering the affidavits by witnesses. You're saying the evidence that should have been admitted is the testimony of the agents? By the candidate statement made a week later. It's difficult to cross examine an affidavit and although affidavits are permitted, it should not go to the extent that it did in this case to result in the termination of Montanza. There are other issues that I raised in the case, but they're in the brief and I'm not going to belabor them with regard to my inability to cross examine the deciding official on the Douglas factors. Did you have a question? No, I'm fine. All right, well you'll have the remainder, you'll have your full rebuttal, actually you haven't used, so you'll have about three, over three minutes for your full rebuttal, Mr. Tong, thank you. And we'll hear from the government. Is it Ms. Ely? Yes, Ely. Ely, okay, thank you. Well you can start whenever you're ready. May it please the court, this is actually a very simple case, this is a senior law enforcement agent who, in his senior status, was held to a higher standard of conduct than others within his agency, who lied, he's caught on paper, absolutely lying, flat out, page 841 of the appendix that's attached right to it. You're talking about the word cousin? Yes, I am. If your honor would like me to discuss it, I would comment that. Do you think the administrative judge was fair in this case? Absolutely, your honor. Do you think that he acted appropriately at all times? Absolutely, even if the administrative judge, and I would note for the record that the administrative judge does take issue, at least with the characterization of some of his comments in Appellant's motion for recusal. But even if the administrative judge said all of those things, the three cases before the MSPB that provide... Certainly during settlement, I think that administrative judges often do give accounts of their thoughts about the case in order to try and foster or garner settlement, but don't you think these comments crossed a line? Ridiculous, I don't believe you, you're lying, those sorts of things, Amina. Are those the appropriate behavior of a judge, do you think? In this context, given, and this is obviously, this is just my personal view, given the egregious nature of the letter, it is my belief that the administrative judge would have been remiss in not advising the petitioner in this case not to expect a good result. How about when this administrative judge during cross-examination of one of the witnesses said, your statement of the law, and I'm reading from appendix page 35, your statement of the law is incorrect, there's no requirement that an agency decide official, agency decide official consider all Douglas factors, he needs to tell me that he considered what he considered to be relevant, that's the law, you're not the law, I'm the law. Wow, an administrative judge who declared himself the law, is that kind of like the wild, wild west, sheriff? Well, your honor, that's also completely divorced from the settlement, the comments that he supposedly made during the settlement conference. But taken together, don't you think all of these paint a picture of the fairness of this particular judge with regard to his approach to the appellant in this case? I don't, because basically, there's no sort of personal bias going on, it's completely divorced from what's going on in the record. The record really does, the letter on page 841, really does encapsulate the whole case very well. And in terms of that statement, no matter what, the statement you referred to on page 35, no matter what the tone of that was, the fact is that there's no error there, because that is an accurate statement of the law. Okay, so here's my question to you. Suppose that there's no question he's guilty, he lied, but that the administrative judge who made that determination clearly had a bias. He came in and said, boy, I don't like this guy, he's going to lose no matter what he says. What do we do on appeal, if that's, I realize that's not exactly your case, but what do we do on appeal with a case like that? Where we believe, probably on the merits, this is probably the right outcome, but the administrative judge was so clearly biased and unfair to the process. I mean, don't we have procedural protections that suggest that the adjudicator ought to be fair and maybe it should be sent back? Your Honor, in my research, I did not identify any that were particularly addressed at this particular situation. I'd also note for the record that, unfortunately, the settlement conference was not taped, so we're not really, I mean, I have no reason to doubt that Mr. Tonkin is being honest, but we really don't have the kind of record review that would frequently be presented with in terms of being able to judge the administrative judge's bias or lack thereof. But in terms of what procedural protections... Are they normally recorded or not recorded, a free hearing conference like that? I don't know, Your Honor. We'll have to find out. So that's through no fault of Mr. Tonkin or Agent Robinson, but it was not recorded. And in terms of what procedural... There's really no... If the outcome is correct, I suppose there's no... Although we might be very uncomfortable with the idea of something that may have occurred during this pre-hearing settlement conference, there's simply nothing in the record that would allow a reversal or really establish a... Even to establish bias definitively, because certainly just because an administrative judge's initial impressions of the case, which in this case were based on documentary evidence and some hearing submissions, just because those initial impressions are later confirmed by the evidence that actually comes out of the hearing, that's not conclusive evidence of an impermissible bias. I'm sorry. What is your response? One of the points that Mr. Tonkin focused on in his argument time was the fact that the AJ... Two points. Number one, didn't allow Mr. Merchant to testify. And number two, heard testimony from the agents, I guess, who had interviewed Ms. Rivera in connection with the two affidavits she gave. Well, Your Honor, those are completely separate testimonies that are subject to completely separate evaluations of whether they should be admissible. And in the case of the Merchant Declaration, there are at least six specific reasons why that would not be appropriate to be admitted, not the least of which would be that the procedures of CIS and whether CIS, the Citizenship and Immigration Services, which is an immigration and naturalization sort of adjudicated arm of DHS, those procedures and how CIS, which is a separate agency from Immigration Customs Enforcement, the border enforcement authority, the investigative arm that Mr. Lehrer was a part of, there are two separate agencies. And the question of how CIS would have viewed his misrepresentation is completely irrelevant to whether he intended to defraud the government. And in fact, any sort of expert reading from the point of view of CIS as to Mr. Lehrer's letter would be completely irrelevant as well. You don't need an expert. As Your Honor correctly noted, I believe, earlier, the letter at 841 really oozes, sort of oozes the use of it, overuses the title three times in an attempt, an apparent attempt to influence the proceedings of an immigration-related agency. So there's really nothing more that Mr. Merchant could do for Mr. Lehrer that would be relevant in this case. In stark contrast, when you think about what the relevance is of Nelly Rivera's affidavit for the specification that deals with the charge of employment, that goes right to the heart of that matter. It's eminently relevant. And so it's a different analysis for the board. The board basically is required to consider about seven factors under the Bornacoff case and did so. So in one of the things that Bornacoff urges, of course, is it urges the A.J. to consider whether the otherwise be inadmissible hearsay was corroborated in some way. And in an effort to perform that analysis, it makes sense that you would have witnesses who could testify as the demeanor of the declarant at the time the affidavit was made. So really, in terms of you really can't put the exclusion of the Merchant declaration on one side and the Rivera affidavit and the allowance of the Rivera affidavit on the other and sort of balance those and make an inference that there was some sort of impermissible bias going on. They're just two completely different aspects of the case with different considerations attached. If we should decide that there was justification, a couple of specifications, a couple of the others are pretty weak, what do we do? Oh, I mean, I assume you're referring to the Rivera side of things because that is by far, admittedly, that is by far the weakest part of this case. As Paul Kilcoyne testified, he is the official that decided that the appropriate penalty for Mr. Lair was removal. He would have removed Mr. Lair for the two things that the letter demonstrates, namely the misrepresentation, which carries, if you look at the table of penalties at page 62 of the supplemental appendix, that carries penalties from written recommend to removal. So removal is permissible for that. He also testified that removal was permissible for the use of the official position for other than official purposes. So even if you were to totally discredit everything that happened with Nelly Rivera, you would still be left in the position of affirming the MSPB, at least on the other grounds. Except there the penalties go all the way from recommend to removal. For misrepresentation. Your Honor, I did not specifically consider the penalties that would attach for use of official position and can't comment on that, unfortunately. In addition, this case was also subjected to a rigorous Douglas factor analysis, in which it was considered that this man had good performance evaluations and no prior disciplinary record. But he was a senior special agent held to a higher standard of conduct. The offenses were compounded by a falsification with respect to his familial relationship. And he destroyed the agency's confidence in their ability to rely on him to testify in criminal matters, where the stakes were very high. And the Douglas factors were also considered as to good performance appraisals and that kind of thing. So there were at least seven things that the deciding official considered in deciding that even for the misrepresentation, for instance, the penalty really was correctly removal rather than a written recommend. Your Honor, if the panel has no further questions for me, the government would rest on its briefs and respectfully request that the MSPB's decision is now confirmed. Thank you, Ms. Ely. Mr. Tonkin, you have your full rebuttal. Thank you, Your Honor. I would like to make a statement with regard to my representations and my motion to recuse. I took handwritten notes as every comment made. And before I made the motion to recuse, I sought counsel, Mr. Muther, who was the counsel of the agency's concurrence that I could file a motion to recuse. And the only comment he had, boy, the judge was rough on you, but he wouldn't agree or disagree with the representations that I was saying. Well, Ms. Ely didn't challenge your representations as to what happened at the conference. With regard to the defrauding of the government, I brought to your attention in my brief on page 25, the Bradley v. Veterans Administration case, which is from the circuit. There was a similar type of – and I'll read to you. Mr. Bradley asserts that his misrepresentations as to his family members were merely to maintain his privacy concerning his personal life. The agency argues that his concern for privacy does not excuse misrepresentations of fact on government forms. However, the misrepresentation here is asserted to rise to an inference of intent to defraud. A misrepresentation which does not support that inference is not material. Here, the misrepresentation on Form 3918 was not material because Mr. Bradley did not receive or attempt to receive a greater monetary benefit from the government that he would have been entitled to had he supplied accurate information. And that's where Mr. Merchant's testimony would have gone to dispel, number two, the misrepresentation. But it does seem that on that point, Mr. Conley, this is a matter that is very clearly within the discretion of the administrative judge. And what you were asking was to have Mr. Merchant come in and really talk about how he would interpret that particular communication. Or how an administrator and an adjudicator would. Based on his experience. That's correct. I can't really see that it's outside the discretion of the judge to decline to allow that. That may be your conclusion, Judge, regarding this case. I'm saying he abused his discretion. What I'm saying is that's a tough discretionary call to overturn given what you were asking for in that respect with respect to the Merchant testimony. No, I understand that. But I still stand on that all these rulings by the administrative judge, taken cumulatively, was an abuse of discretion. You're saying it's the whole picture. Yes. As Moore pointed out, there was no fairness that I can tell you I sensed in either the oral written response or response to the original administrative matter before Mr. Kilcoyne or with the administrative judge in this case. Of course, all I did was supply briefs to the board, which they just out of hand just said no foul, no harm, no foul. Thank you, Mr. Tompkins. Thank you very much for letting me appear. And I have to find my way back to Texas. Well, have a good trip back. Thank you. Zulu, thank you. The case is submitted.